**UNITED STATES of America,
Appellee,**

v.

**Larry Eugene COOK, Appellant.**

**No. 23667.**

United States Court of Appeals
Ninth Circuit.

Oct. 24, 1969.

---

1. Definition of "defective", Black's Law Dictionary.

**322**

Marvin Rothman (argued), Berkeley, Cal., for appellant.

William B. Shubb (argued), Asst. U. S. Atty., John P. Hyland, U. S. Atty., James J. Simonelli, Asst. U. S. Atty., Sacramento, Cal., for appellee.

Before MERRILL and CARTER, Circuit Judges, and JAMESON,* District Judge.

JAMES M. CARTER, Circuit Judge:

Appellant, convicted by a jury and sentenced to 30 months imprisonment for a violation of the Dyer Act, 18 U.S. C. § 2312, raises two contentions on his appeal:

(1) That admissions made by him to the arresting officer were improperly received in evidence against him in violation of the rule of Miranda v. Arizona, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 and Jackson v. Denno (1963) 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908; and

(2) That the district court erred in not ordering a second psychiatric examination under 18 U.S.C. § 4244 and in its determination of appellant's competency to stand trial.

I

THE ADMISSIONS WERE PROPERLY RECEIVED IN EVIDENCE.

On June 13, 1968 appellant was stopped by a police officer in Vacaville, California, for failing to make a boulevard stop. A radio check revealed that the truck appellant was driving was a stolen vehicle, owned by an Arizona company. Appellant was arrested and searched, and credit cards stolen from the company were found in his wallet. The officer also found, in the glove compartment of the truck, a total of 51 receipts from purchases made by appellant with the credit cards.

The arresting officer then advised appellant of his Constitutional rights. The *Miranda* rights were read to appellant from a printed card which the officer carried with him. When he finished, the officer asked appellant, "Do you understand each of these rights I have explained to you?" Appellant replied, "Yes." The officer then asked, "Having these rights in mind, do you wish to talk to us now?" Appellant replied, "Yes, I will." Appellant was then taken to the police station where he was again advised of his rights and asked if he

* Hon. William J. Jameson, Senior District Judge, District of Montana, sitting by designation.

wished to talk. Upon stating that he would talk, appellant related to the officer how he had stolen the truck and credit cards. After answering some further questions, appellant indicated that he wanted to talk to a lawyer and the interrogation was stopped.

■ On these facts we find no merit to appellant's contention that he did not "affirmatively" and voluntarily waive his rights.

■ Appellant also contends that the trial judge failed to make the proper findings as to the propriety of the waiver and voluntariness of the admission. We disagree. After a hearing in the absence of the jury the trial judge specifically stated:

"I am going to find and do so find that the statement was properly read and that it was read in its entirety to him prior to the taking of any statements from him; that he was advised that he had the right to an attorney; that he elected to give a statement without the advice of an attorney until apparently somewhere while making the statement he then reversed himself and decided that he wanted an attorney and the statement taken up to that time would be admissible on that ground."

This was the equivalent of an express finding of knowing and intelligent waiver on the appellant's part.

The voluntariness of the admissions were also heard in the absence of the jury and the court stated there was no "Jackson v. Denno problem," and ruled the confessions admissible. Again, we repeat, the court's ruling was clear and appellant may not quibble over the language used by the court.

## II

## UNDER THE FACTS OF THIS CASE A SECOND § 4244 EXAMINATION WAS NOT REQUIRED.

On July 2, 1968, appellant's motion for a psychiatric examination pursuant to 18 U.S.C. § 4244 was granted. Appel-

lant, as required by the statute was examined by a "qualified psychiatrist" appointed by the court. The court requested a determination of "* * * the defendant's mental competency to *understand the proceedings against him and to assist in his own defense*, and further * * * as to his mental condition on or about June 13, 1968," the date of the offense. [Emphasis added.]

Once again appellant quibbles with language. In the first paragraph of the report of Dr. James R. Richmond, the psychiatrist states "The examination was for the purpose of determining his present mental competency and his mental competency at the time of the offense for which he is charged." In the last paragraph of his report the doctor concluded, "It is my opinion that he is presently of such mental state as to be considered legally sane," and that "he was of such mental state at the time of the offense as to be considered legally sane."

We consider the above, as did the trial court, to be a finding by the psychiatrist, that the appellant understood the proceedings against him and was able to assist in his defense.

Dr. Richmond examined appellant on July 8, 1968 and his report was filed with the court on July 9, 1968. Twice, on July 17 and August 9, appellant made motions for another psychiatric examination under § 4244, but these were denied.

The trial was to commence August 26, 1968. On that date after examining the report of Dr. Richmond, the court determined that appellant was competent to stand trial, and the trial was begun. During the course of the trial, on September 3, 1968, appellant's counsel moved to suspend the proceedings on the ground that the appellant was incompetent, and again requested judicial determination of his competency to stand trial.

A hearing out of the presence of the jury was conducted by the court. Dr. F. E. Seale, an M.D. but not a psychiatrist had been brought to Sacramento, Cali-

fornia at government expense as a witness requested by appellant. Dr. Seale testified he was an M.D. and for two years had been a Ward Physician at San Antonio State Hospital in Texas. There, as a physician in September 1967, he had treated and observed appellant. Dr. Seale had seen him for 10 to 15 minutes on the day before he testified. He testified that appellant understood the proceedings against him but probably could not cooperate with counsel, since he rambled on questions asked by Dr. Seale.

The trial judge had just previously heard the testimony to the jury of Dr. Willie and Dr. Blevins, doctors who had been subpoenaed at government expense to testify in appellant's defense. Each had testified in substance, that he had no reason to believe appellant incompetent *at the time of the commission of the offense* on June 13, 1968.

The court considered the testimony of Dr. Seale, the report of Dr. Richmond and its observation of the demeanor of appellant during the trial, and concluded that appellant was competent and a further § 4244 examination was unnecessary.

There *is little law available as to* successive § 4244 hearings. Meador v. United States, (9 Cir. 1964) 322 F.2d 935 cited by appellant is distinguished on two grounds. First, the court in *Meador* did not grant any psychiatric examination at all. Second, the psychiatric report relied upon by the court was made some 5 months prior thereto and was a § 4244 examination in another criminal proceeding. Here the court granted the initial request for the § 4244 hearing and the examination was made less than two months prior to the last request discussed above.

■ When the issue of competency to stand trial is properly raised, there is no question but that an initial psychiatric examination pursuant to 18 U.S.C. § 4144 is mandatory. The question as to when a second examination under the section is required is a question which de-

pends upon the showing made, and the length of time elapsed from the prior psychiatric examination. Obviously a court would not be required to order a hearing during each week of a trial, absent unusual circumstances. The decision as to whether to require a second examination rests in the sound discretion of the trial court. The trial court's decision will not be upset unless there is abuse of that discretion.

Here the trial court conducted a hearing, heard Dr. Seale's testimony and obviously did not credit Dr. Seale both because of his lack of psychiatric training, and the nature of his testimony; instead relied upon Dr. Richmond, the psychiatrist who had first examined the appellant, and also upon the court's observations of the appellant during the trial. The trial court stated its findings and the reasons for its order denying the motion.

■ The contention of appellant's counsel that the witnesses which the appellant requested be subpoenaed were not helpful to him, has little meaning. Appellant was able to remember the names of the doctors so they could be called as witnesses. The fact that they did not help the appellant in their testimony is not in itself proof of appellant's incompetency to stand trial. The fact that appellant rambled in his testimony at the trial and in his conference with Dr. Seale is not in itself proof of present incompetency. Many intelligent witnesses ramble and fail to directly answer questions.

■ We think the trial court properly exercised its discretion in conducting the hearing and that with the facts and information it then had before it, did not abuse its discretion in refusing to grant the second § 4244 hearing.

■ Finally appellant claims he was under the influence of drugs. At sentencing appellant stated he had been taking Thorazine tranquilizers and Phenobarbitol sedatives during the trial. Tranquilizers and sedatives are not narcotics and Hansford v. United States, (1966)

124 U.S.App.D.C. 387, 365 F.2d 920, cited by appellant is not in point. In addition, the district court was aware that defendant had been in custody from the time of his arrest. No question as to the use of narcotics was ever raised in the case.

The judgment is affirmed.