**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert Spencer BODEY,**
**Defendant-Appellant.**

No. 76–1332.

United States Court of Appeals,
Ninth Circuit.

Feb. 16, 1977.

Kenneth E. Kanev, argued, Asst. Fed. Public Defender, Seattle, Wash., for defendant-appellant.

Robert M. Taylor, argued, Asst. U. S. Atty., Seattle, Wash., for plaintiff-appellee.

Before BROWNING and KILKENNY, Circuit Judges, and VAN PELT, Senior District Judge.*

## OPINION

ROBERT VAN PELT, Senior District Judge.

This is an appeal by Robert Spencer Bodey from a conviction for armed robbery of a national bank in violation of 18 U.S.C. § 2113(a) and (d). A trial was held in the Western District of Washington October 16–21, 1975, which resulted in a hung jury. On November 10, 1975, defendant moved for a competency examination pursuant to 18 U.S.C. § 4244. On November 13th defendant was sent to the Medical Center for Federal Prisoners at Springfield, Missouri, where a competency examination was conducted and the defendant was found competent to stand trial. Defendant was returned from Springfield on December 1, 1975, and a second trial was held December 15–18, 1975. The jury returned a verdict of guilty. Bodey was committed to the custody of the Attorney General of the United States and is again at the Medical Center in Springfield.

On appeal, Bodey raises three issues:

(1) That at the first trial the court erred in denying his motion for judgment of acquittal at the close of the government's case;

(2) that at the second trial the court erred in refusing to grant an 18 U.S.C. § 4244 competency examination; and

(3) that the prosecutor's statement "there is ample evidence Mr. Bodey is faking" during the second trial was prejudicial and deprived defendant of a fair trial.

We will consider each of these issues separately.

### I.

#### The Motion for Acquittal

Bodey's defense at both trials was insanity. The jury at the second trial, as above noted, did not find him insane.

Bodey urges particularly that at the first trial the government did not overcome the testimony of the two psychiatric experts for the defense who said that as a result of mental disease or defect he could not conform his conduct to the requirements of law. This testimony meets the standards for legal insanity under *Wade v. United States,* 426 F.2d 64 (9th Cir. 1970). We agree that Dr. Johnson's testimony (the government expert) at the first trial was not strong when compared to the two expert witnesses for defendant. Bodey urges that his motion for acquittal at the first trial should have been sustained.

There have been instances in this court where we ordered a judgment of acquittal after the government presented insufficient evidence of sanity, because a new trial would serve no purpose. *Buatte v. United States,* 330 F.2d 342, *rehearing denied* 331 F.2d 848 (9th Cir. 1964). However, in this case a new trial has already been held in which the government did sustain its burden of proof as to the defendant's sanity by securing additional psychiatric testimony tending to show Bodey could conform his conduct on the date in question. Inadequacy of the government's testimony is not claimed at the second trial. In *United States v. McGraw,* 515 F.2d 758 (9th Cir. 1975) this court noted that when the

* The Honorable Robert Van Pelt, Senior United States District Judge, District of Nebraska, sitting by designation.

government produces insufficient evidence of sanity a judgment of acquittal is not necessarily the rule and ordered the case remanded to the district court because "we are not convinced that the government could not introduce expert testimony of McGraw's sanity." *Id.* at 761. We believe that whether a judgment of acquittal or new trial should be ordered depends upon the facts of each case, and where, as here, a valid second trial has already taken place, that factor cannot be overlooked. The jury having failed to agree on a verdict in the first trial, and the judge having declared a mistrial on account thereof, we need not rule on the sufficiency or insufficiency of the evidence of sanity at that trial.

## II.

### *Subsequent § 4244 Examinations*

■ Defendant was called to the witness stand to testify in his own defense during the second trial. He gave many answers of "I don't know", "I'm not sure", and "I can't remember", to background questions of his counsel (such as why he didn't graduate from high school, whether he had ever testified in court before, how old his brother and sister were) and to questions regarding various dates and times (such as how long he had been in jail, when he had last seen his daughters, dates of employment, his divorce, etc.). The government objected to defense counsel's use of leading questions and defense counsel expressed surprise that defendant did not remember this information. The court allowed defense counsel to continue refreshing Mr. Bodey's memory by the use of leading questions, and granted a recess for defense expert Dr. Berberich to examine the defendant. After the recess, defense counsel moved for a § 4244 hearing. The court then conducted its own competency hearing. Mr. Bodey was again put on the stand, out of the jury's presence, and he testified he was leaving his defense up to counsel and that although counsel had advised him to testify he did not feel well and was not capable of testifying. Dr. Berberich testified he had examined the defendant for 15 minutes that morning and, from

that very brief contact, he seriously doubted whether the defendant could assist counsel in his own defense. He had also seen the defendant for approximately an hour the previous evening, but admitted that an hour is not long enough to do an extensive evaluation and he was only able to form impressions. The court then read into the record the results of the November, 1975 § 4244 examination at Springfield.

At Springfield the defendant had been examined by twelve members of a psychiatric team (not all of whom were doctors). Both physical and mental tests were done on the defendant, and it was the team's determination that Bodey was competent to stand trial. Attached to this report were reports of the individual psychiatrists who examined Mr. Bodey. Three of these reports noted the defendant's very vague answers to questions. Dr. Ottensmeyer stated the defendant gave answers such as "I'm not sure" or "I don't know", to simple, general questions regarding his family, education, and whether he had any children. Dr. Brooks noted that the defendant was very vague about his parents and his early life. Dr. Fain, the third psychiatrist, stated the defendant was unable to remember any details of the previous trial, when it took place, or even what the charge was. When Dr. Fain interviewed the defendant, Bodey could remember virtually nothing about his past.

It was Dr. Brooks' opinion that Bodey's memory loss was merely a device to forestall his second trial and that he was "feigning mental illness." Dr. Ottensmeyer noted that defendant told him that he did not know if he had an attorney and did not think he could cooperate with one. The report of the Springfield staff was made approximately three weeks before the second trial. After the trial court read these reports into the record, it ruled that the defendant was competent. The defense then made an offer of proof using Dr. Liebert, another expert witness for the defense, who had examined the defendant for half an hour during noon recess. Dr. Liebert stated he did not understand the de-

fendant's memory deficit, as Bodey claimed he could not remember anything, including his counsel's name or why he was in court, and at this point, on the basis of his brief examination, he thought Bodey was incompetent to stand trial. Defense counsel moved for a further § 4244 hearing, and the trial judge again ruled Bodey competent to stand trial. Motion for a competency examination was again made at sentencing and was again denied.

It is the defendant's contention that there was such a change in Mr. Bodey's condition between the first § 4244 examination and the requests for a second examination, that a second examination was required. The defendant argues that *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) is controlling, but submits that even under the Ninth Circuit's standards in *United States v. Ives,* 504 F.2d 935 (9th Cir. 1974), *vacated and remanded,* 421 U.S. 944, 95 S.Ct. 1671, 44 L.Ed.2d 97 (1975), *vacated, reinstated in part, and remanded in part,* 547 F.2d 1100 (9th Cir. No. 73–1726 1976) and *United States v. Cook,* 418 F.2d 321 (9th Cir. 1969) defendant should have been granted a second examination. We disagree and find the trial court acted properly.

*Drope, supra,* is distinguishable from the instant case. In *Drope* there was no § 4244 examination prior to the trial and no evidentiary hearing on competency during the trial. The defendant's behavior immediately prior to the trial and during it should have created some question of competency. The Supreme Court found that:

[t]oo little weight was given to the testimony of petitioner's wife that on the Sunday prior to trial he tried to choke her to death. For a man whose fate depended in large measure on the indulgence of his wife [he was charged with the rape of his wife], who had hesitated about press-

ing the prosecution, this hardly could be regarded as rational conduct.

*Id.* 420 U.S. at 179, 95 S.Ct. at 907. Furthermore, the petitioner in that case shot himself in an attempt to commit suicide on the second day of the trial. *See also Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) where the defendant had a long history of disturbed behavior including killing his son for which he had already been imprisoned, and no § 4244 examination was conducted prior to trial and no evidentiary hearing on competency was held during trial; *Moore v. United States,* 464 F.2d 663 (9th Cir. 1972) where the defendant had a long history of mental illness and hospitalizations for psychiatric disorder and there was no evidentiary hearing during the trial; *Tillery v. Eyman,* 492 F.2d 1056 (9th Cir. 1974), where the defendant exhibited erratic and irrational behavior, yelled and screamed from his jail cell at night, and during the course of the trial put his head through a window; the trial court was convinced the defendant was psychotic and the defense presented evidence Tillery was unable to aid counsel yet there was no evidentiary hearing on competency.[1]

The trial court in this case did conduct a hearing during the trial regarding the defendant's competency to stand trial. It heard from the defendant and two psychiatrists who were testifying as expert witnesses for him, and it also examined the report of the Springfield psychiatric team which resulted from the § 4244 examination conducted three weeks earlier.

We do not believe that *Drope, supra,* has invalidated *United States v. Cook, supra,* wherein this court stated:

When the issue of competency to stand trial is properly raised, there is no question but that an initial psychiatric examination pursuant to 18 U.S.C. § 4144 (sic) is mandatory. The question as to when a

---

1. This court recently reviewed all of the above cases on competency in *de Kaplany v. Enomoto,* 540 F.2d 975 (9th Cir. 1976), *cert. denied,* —— U.S. ——, 97 S.Ct. 815, 50 L.ed.2d 793 (1977), where we stated:

We are not prepared to assert that in every trial in which the sanity of the defendant is

contested there must exist a good faith doubt which requires a hearing on competency. *Id.* at 983. The above cases were also reviewed in *Bassett v. McCarthy,* 549 F.2d 616 (9th Cir. No. 75–1978 1977).

second examination under the section is required is a question which depends upon the showing made, and the length of time elapsed from the prior psychiatric examination. Obviously a court would not be required to order a hearing during each week of a trial, absent unusual circumstances. The decision as to whether to require a second examination rests in the sound discretion of the trial court. The trial court's decision will not be upset unless there is abuse of that discretion. *Id.* at 324. The behavior of the defendant at trial was similar to that reported by the Springfield team. They were not unaware of his apparent lack of memory and the defendant had stated he did not know whether he had an attorney and did not know whether he could cooperate with one. This report was prepared only three weeks before the trial and the defendant was found competent, with one of the psychiatrists expressing an opinion that he believed Bodey was "feigning mental illness."

On December 28, 1975, before sentencing the defendant, the court ordered a mental examination of Bodey in order to aid the court in sentencing. This examination was performed and the court had the results of the examination at the time of sentencing. The court noted at sentencing that it had examined this report as well as the testimony at the time of trial and the reports submitted during the trial. We have examined the record and do not believe that the trial court abused its discretion at any time in refusing the defendant's requests for a § 4244 examination.

### III.

### *Prosecutor's Comments During Trial*

■ Defendant was a witness on two of the four days the trial consumed. The first day defendant stated he did not feel well and could not testify and was leaving his defense up to his counsel. Although he stated he felt well the second day he testified, his memory was apparently not improved and his responses to questions were much the same as before. His counsel again used leading questions to refresh his memory, and the prosecutor again objected. Defense counsel argued that in this instance it was proper for him to use leading questions, and stated: "I think it is apparent that Mr. Bodey has problems." (T. V, p. 397, l. 4–5) At this point, the following occurred in front of the jury:

[Govt. prosecutor]: Your Honor, we went through this whole thing out of their hearing and there is ample evidence Mr. Bodey is faking.

[Defense counsel]: I object to the remark of counsel and I move for a mistrial at this time.

The Court: That will be denied.

[Defense counsel]: There is no evidence of any faking, to use counsel's word, and the record will speak for itself and I move for a mistrial.

The Court: The Court denies your motion. You may continue your examination.

[Defense counsel]: With respect to counsel's objections, Your Honor—

The Court: Well,—

[Defense counsel]: I will advise the Court that I think leading questions will be necessary.

The Court: Well, out of rather than of the appearance of being prejudiced, I will overrule the objection and let you proceed.

[Defense counsel]: I wonder if the Court would clarify the Court's own ruling yesterday that took place in the absence of the jury with respect to the finding and also correct counsel's misstatement as to what the court's finding was.

The Court: I suggest you go ahead and proceed. As I indicated, right now, you may proceed in the manner you choose.

[Defense counsel]: Would the Court permit me to inform the jury of what the Court's finding was yesterday?

The Court: No, I will not.

[Defense counsel]: I am questioning—the Court has already ruled that the jury is entitled to know what the ruling of the Court was.

The Court: You mean with respect to leading questions?

[Defense Counsel]: No, with respect to competency.

The Court: I'm not going to at this time. I will advise the jury when—

[Defense counsel]: Would the Court at least indicate to the jury there was no conclusion on the Court's part that Mr. Bodey was faking anything?

The Court: I had no intention of indicating that he was faking anything.

[Prosecutor]: Excuse me, just to keep the record straight—

[Defense counsel]: Excuse me, counsel. If any further—

[Prosecutor]: The Court made a ruling that Mr. Bodey was faking it? I said something quite different.

[Defense counsel]: Thank you. Maybe I misunderstood what you said, Mr. Taylor. If I did, I apologize.

T. V, p. 397, l. 6–25 through 399, l. 10.

It is apparent from the foregoing that even defendant's counsel was not certain what had been said by the time everything was over. Given the apparent confusion at the time, it is doubtful that the jury attached any weight to the statement. Furthermore, the jury was clearly informed by the court in its instructions that they were to disregard any evidence which was not admitted, and that counsel's remarks and statements were not evidence. *Tenorio v. United States*, 390 F.2d 96 (9th Cir.), *cert. denied* 393 U.S. 874, 89 S.Ct. 169, 21 L.Ed.2d 145 (1968). While the prosecutor should have exercised more self-restraint and there is little excuse for his conduct, we find that it was harmless error under Fed.R.Crim.P. 52(a).

We do not believe the defendant was prejudiced or that any of the errors assessed merit reversal.

The judgment is affirmed.