**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert Spencer BODEY,**
**Defendant-Appellant.**

No. 79–2503.

United States Court of Appeals,
Ninth Circuit.

Oct. 23, 1979.

Kenneth E. Kanev, Seattle, Wash., for defendant-appellant.

Robert M. Taylor, Asst. U. S. Atty., Seattle, Wash., for plaintiff-appellee.

Before HUFSTEDLER and TRASK, Circuit Judges, and SOLOMON,* District Judge.

SOLOMON, District Judge.

Robert Spencer Bodey appeals from the denial of his 28 U.S.C. § 2255 motion. He contends that the trial court erred in denying his motion for a judgment of acquittal at his first bank robbery trial and that his conviction after a second trial must now be vacated under *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). We agree.

On August 8, 1975, Bodey robbed the Midway Branch of the Puget Sound National Bank near Seattle, Washington.

Bodey lived in the Midway area and banked at this bank until his marriage broke up in the spring of 1974. He then left his job and moved to Spokane. Bodey lived in Spokane until he was laid off in October 1974. He then traveled around looking for work until August 1975.

On August 7, 1975, Bodey was at his parents' home in Spokane. He found a gun in their closet and decided to rob the bank at Midway, where he had formerly had an account. He took his parents' car at noon and drove about 300 miles, arriving at Midway at about 9 p. m. He spent the night

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

listening to the car radio at a parking lot near the bank.

On the next morning, Bodey borrowed a jump cable from a nearby fire station so that he could start the car because he had exhausted the battery. He drove to the side of the bank and parked the car with the motor running. He put the gun in his belt, covered the gun with one shirttail and went in the bank. He gave a teller a demand note and a bag for money; he showed her the gun; and when she gave him the money he quickly left the bank.

Bodey drove to a service station near the bank and asked for new spark plugs. He was arrested there.

Bodey's defense at the first trial was insanity.

Each side relied on expert testimony and the testimony of lay witnesses. Bodey's motion for a judgment of acquittal was denied. The jury could not agree on a verdict.

Later, Bodey was retried. This time he was convicted. On appeal, he contended that his conviction should have been reversed because of the court's failure to grant his motion for acquittal at his first trial. This Court did not reach Bodey's contention because he had already been tried again and convicted. *United States v. Bodey*, 547 F.2d 1383, 1384–1385 (9th Cir.), *cert. denied*, 431 U.S. 932, 97 S.Ct. 2639, 53 L.Ed.2d 249 (1977).

Bodey filed this § 2255 motion after the Supreme Court decided *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). The District Court denied his motion and he appeals.

Bodey contends he was entitled to a judgment of acquittal at his first trial and therefore, under *Burks*, is entitled to have his conviction on the second trial vacated.

In *Burks*, the defendant was convicted of bank robbery. He, too, had relied on an insanity defense. The Court of Appeals held that he was entitled to a judgment of acquittal because the evidence of his sanity was insufficient and remanded for a second trial. *United States v. Burks*, 547 F.2d 968 (6th Cir. 1976). Burks was not retried because the Supreme Court reversed the order remanding him for retrial.

The Supreme Court held that the Double Jeopardy Clause barred a second trial because Burks was placed in jeopardy at the first trial and then was entitled to a judgment of acquittal. The Court stressed the fairness of its decision, that:

"it should make no difference that the *reviewing* court, rather than the trial court, determined the evidence to be insufficient, see [*Sapir v. United States*, 348 U.S. 373, 374, 75 S.Ct. 422, 99 L.Ed. 426 (1955) (Douglas, J., concurring)].

"The appellate decision unmistakably meant that the District Court had erred in failing to grant a judgment of acquittal. To hold otherwise would create a purely arbitrary distinction between those in petitioner's position and others who would enjoy the benefit of a correct decision by the District Court. See *Sumpter v. DeGroote*, 552 F.2d 1206, 1211–1212 (CA7 1977).

"The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. This is central to the objective of the prohibition against successive trials. The Clause does not allow 'the State . . . to make repeated attempts to convict an individual for an alleged offense,' since '[t]he constitutional prohibition against "double jeopardy" was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.' *Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957); see *Serfass v. United States*, 420 U.S. 377, 387–388, 95 S.Ct. 1055, 1061–1062, 43 L.Ed.2d 265 (1975); *United States v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971)." 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 [footnote omitted].

Unlike Bodey, Burks was not retried. But, Bodey was placed in jeopardy at his first trial and he was retried after the jury

hung on evidence which he contends was insufficient. We believe this procedural difference between *Burks* and *Bodey* is an "arbitrary distinction" which should not be given significance. Here the government seeks two chances to present sufficient evidence of Bodey's sanity; *Burks* holds that the government must present sufficient evidence the first time to get a second chance. Bodey is entitled to a judgment of acquittal if the evidence at his first trial was insufficient.

The government contends that *Burks* should only be applied prospectively to convictions which were not final when it was announced. It cites *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) and *Weinberg v. Mitchell*, 588 F.2d 275 (9th Cir. 1978). These two cases applied a test adapted from *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). These cases were concerned with the applicability of new rules to parties who had relied on the old rules to their disadvantage. The Supreme Court specifically distinguished the *Linkletter* line of cases in a later double jeopardy decision. *Robinson v. Neil*, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973). The Court explained that:

"The guarantee against double jeopardy is significantly different from procedural guarantees held in the *Linkletter* line of cases to have prospective effect only. While this guarantee, like the others, is a constitutional right of the criminal defendant, its practical result is to prevent a trial from taking place at all, rather than to prescribe the procedural rules that govern the conduct of a trial." 409 U.S. 505, 509, 93 S.Ct. 876, 878, 35 L.Ed.2d 29.

■ In our view, the *Burks* rule should be applied retroactively.

Bodey contends that the government's evidence at the first trial did not meet its burden of proof and that his motion for a judgment of acquittal at the first trial was improperly denied.

It is undisputed that Bodey appreciated the wrongfulness of his conduct. The issue is whether the government, at the first trial, proved that Bodey had "substantial capacity . . . to conform his conduct to the requirements of law." *Wade v. United States*, 426 F.2d 64, 71 (9th Cir. 1970) (en banc).

■ A clinical psychologist, Dr. Berberich, and a psychiatrist, Dr. Liebert, two defense witnesses, testified that Bodey could not conform his conduct to the law on August 8, the day of the robbery.

Dr. Berberich saw Bodey four times after August 25. He spent five hours with Bodey and administered an extensive series of standardized tests. Dr. Berberich described these tests and examinations in detail and he concluded that Bodey was "psychotically depressed" and "self-destructive". He thought the bank robbery was a "suicidal act" which was the culmination of Bodey's "psychotic depression".

Dr. Liebert saw Bodey shortly after the robbery and on one other occasion. He also considered Bodey's psychiatric history and Dr. Berberich's report. He diagnosed Bodey's condition on the day of the robbery as a "psychotic depressive reaction". Dr. Liebert gave a detailed explanation of his opinion and described Bodey's condition as a suicidal depression which was present long before the robbery.

Bodey testified to the stress he was under at the time of the robbery.

Bodey's father and the lawyer who represented Bodey on a child visitation dispute testified about his instability before the bank robbery.

Bodey's proof highlighted the irrationality of his decision to drive hundreds of miles to rob the bank where he had done business and of his clumsy attempt to escape.

Bodey's evidence stated a prima facie case of insanity which obligated the government to prove Bodey sane beyond a reasonable doubt. In *United States v. McGraw*, 515 F.2d 758 (9th Cir. 1975), the Court, in reversing a bank robbery conviction, summarized the evidence the government could have used to meet its burden.

"Once the defendant has introduced sufficient expert testimony to support a reasonable doubt as to sanity, the govern-

ment must: (1) introduce its own expert testimony in rebuttal; or (2) discredit the defendant's expert testimony on cross-examination; or (3) rely upon evidence from which the jury may infer that the defendant's expert testimony depends upon an incorrect view of the facts." 515 F.2d 758, 760.

The government here contends that its expert, Dr. Johnson, presented sufficient rebuttal testimony. We disagree.

Dr. Johnson, a psychiatrist, saw Bodey ten weeks after the robbery for only one hour. Dr. Johnson testified he did not find any evidence of psychotic depression but he admitted that Bodey was suffering from a "quite severe depression" and that it is not always possible to notice psychosis in one hour. Dr. Johnson also testified that he found that Bodey was "almost glad to be in jail where he was taken care of"; and Dr. Johnson agreed with the other experts that Bodey's condition had improved while he was institutionalized awaiting trial. He admitted that test results and the other doctors' reports evidenced "a depression that approached, if it didn't reach, psychotic proportions" on August 8.

Dr. Johnson in other cases had testified about other defendants' ability to conform their conduct to the requirements of law, but he refused to express an opinion on Bodey's ability to conform. Dr. Johnson said he found it difficult to express an opinion, partly because of the passage of time between the bank robbery and the examination. He also expressed doubts about his ability to form such an opinion. Although Dr. Johnson testified that Bodey's conduct on the day of the robbery was consistent with the ability to conform to the law, he admitted that Bodey's conduct did not tend to prove that Bodey could conform to the law and he also admitted that he was not aware of significant facts until they were brought to his attention during cross-examination. Dr. Johnson's ambivalent testimony is, at most, inconclusive.

The lay testimony does not sufficiently evidence Bodey's sanity. Although Bodey successfully robbed the bank, the robbery only took two minutes; and witnesses from the bank did not have an opportunity to judge Bodey's sanity. The teller who was robbed testified that Bodey looked like he came from a nearby home for the physically or emotionally handicapped. And, she described Bodey as "messy, dull looking", "quiet looking," a "doefus", someone "with no personality, like no feelings or something". Nevertheless, she insisted that Bodey was not "mentally slow". The lay testimony is consistent with Bodey's expert testimony that Bodey could efficiently carry out a catastrophic or suicidal decision to rob a bank without appearing significantly abnormal although he could not conform his conduct to the law. The lay testimony did not discredit Bodey's experts or prove Bodey's sanity. *See United States v. Cooper*, 465 F.2d 451, 455 (9th Cir. 1972).

Bodey's experts were not discredited on cross-examination.

The government's evidence of Bodey's sanity, which at best was inconclusive, was not enough to rebut Bodey's evidence and did not meet the government's burden. The District Court erred when it denied Bodey's motion for a judgment of acquittal at his first trial.

The District Court's denial of Bodey's § 2255 motion is

REVERSED.