**UNITED STATES of America**

v.

**Robert D.H. RICHARDSON, Appellant.**

**No. 81–2029.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 4, 1982.

Decided March 11, 1983.

As Amended March 11, 1983.

Scalia, Circuit Judge, filed a dissenting opinion.

Allan M. Palmer, Washington, D.C., for appellant.

Marc Tucker, Asst. U.S. Atty., Washington, D.C., for appellee. Stanley S. Harris, U.S. Atty., John A. Terry, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed, John R. Fisher, William J. O'Malley, Jr., and Kathleen E. Voelker, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee. Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellee.

Before TAMM, WILKEY and SCALIA, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILKEY.

Dissenting opinion filed by Circuit Judge SCALIA.

WILKEY, Circuit Judge:

This case highlights the tension created by the intersection of a criminal defendant's double jeopardy right to avoid the rigors and embarrassment of an unnecessary second trial and the long-standing rule that a criminal defendant has no constitutional right to an appeal. Because the present appeal does not fit within the scope of our appellate jurisdiction, we hold that the defendant cannot appeal the trial court's double jeopardy ruling at this time even though he may be required needlessly to endure the strains of a second trial.

## I. BACKGROUND

Appellant, Robert D.H. Richardson, was indicted for conspiracy to distribute a controlled substance[1] and for two counts of distribution of a controlled substance.[2] His motion for a judgment of acquittal on the ground that the government had failed to produce legally sufficient evidence was denied both at the close of the government's evidence and immediately before submission of the case to the jury. The jury acquitted on one of the two distribution counts but was unable to reach a verdict on the conspiracy and remaining distribution counts. The court declared a mistrial and scheduled retrial, whereupon appellant renewed his motion for judgment of acquittal, and in addition moved to bar retrial on the basis of former jeopardy. This appeal was taken from the denial of those motions.

It is important at the outset to understand the nature of Richardson's double jeopardy claim. Contrary to the dissent's implication,[3] Richardson does not claim that the jury's failure to reach a verdict bars retrial. Instead, citing *Burks v. United States*,[4] in which the Supreme Court held that a criminal defendant could not be retried after an appellate court determined that the evidence presented at his first trial was legally insufficient, he contends that *"no matter what the jury did* [he] cannot be retried *since the evidence was insufficient to submit to the jury in the first instance."*[5] Thus, Richardson's double jeopardy claim is based *entirely* on his contention that the evidence at the first trial was legally insufficient. Since the trial court ruled that the evidence presented at the first trial *was* sufficient, Richardson's double jeopardy claim has meaning only if that ruling can be overturned. Our ability to rule on Richardson's double jeopardy claim in any meaningful manner therefore depends on the appealability of the trial court's ruling on the sufficiency of the evidence. Because the sufficiency issue cannot now be reviewed, we hold that Richardson is not entitled to appellate review of his double jeopardy claim at this time.

## II. APPELLATE JURISDICTION

In determining the appealability of an issue arising in a federal criminal proceeding, it is important to remember that in a criminal case "there is no constitutional right to an appeal."[6] Thus, it is not possi-

1. 21 U.S.C. § 846 (1976).

2. *Id.* § 841(a)(1).

3. Dissenting op. at 1089.

4. 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

5. Appellant's Brief at 33 (emphasis added).

6. *Abney v. United States,* 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d 651 (1977) (citing *McKane v. Durston,* 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894)).

ble for Richardson to argue that the double jeopardy clause *requires* us to entertain the present appeal. The appealability of Richardson's claims depends solely on whether Congress authorized such appeals under 28 U.S.C. § 1291.[7] Since a final judgment has not been reached by the court below,[8] appeal under section 1291 in turn depends on Richardson's ability to bring his claims within the collateral order exception to the final judgment rule. This rule was first recognized in *Cohen v. Beneficial Industrial Loan Corp.*[9] and was reiterated in the context of a criminal case in *Abney v. United States.*[10]

█ To come within the reach of the *Cohen* exception, the decision in question must meet three tests. First, it must fully dispose of the controverted issue; in no sense may it "leave the matter 'open, unfinished or inconclusive.'"[11] Second, it must not be "simply a 'step toward final disposition of the merits of the case'"; it must resolve "an issue completely collateral to the cause of action asserted."[12] Finally, the decision must involve "an important right which would be 'lost, probably irreparably,'" if review awaited final judgment.[13]

█ We have little difficulty in applying this test to the district court's ruling on Richardson's insufficiency claim. That rul-

ing fails to meet the second and third requirements of *Cohen*. As two other circuits have noted, the legal sufficiency of the evidence presented is "a completely non-collateral issue."[14] This is because the ultimate question in a criminal trial is whether the defendant is guilty of the crime charged. A defendant who chooses to go to trial is not guilty unless the prosecution is able to prove beyond a reasonable doubt that the defendant committed the crime.[15] If the evidence presented at the first trial was legally insufficient, Richardson is automatically not guilty. Thus, the sufficiency of the evidence is anything but collateral to the merits of the upcoming trial (*i.e.,* the question of defendant's guilt, for this is *determined by* the sufficiency of the evidence); rather, it is a "step toward final disposition of the merits of the case [which will] be merged in the final judgment," the type of issue which is *not* covered by the collateral order exception.[16]

Further, the right to appellate review of the issue will not necessarily be lost if we refuse review at this time. Three circuits have held that a criminal defendant can challenge the sufficiency of the evidence presented at his first trial (which resulted in a hung jury) when appealing his conviction at the second trial.[17] Indeed, in the present case the government concedes that

7. Section 1291 provides:
   The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court.

8. "Final judgment in a criminal case means sentence. The sentence is the judgment." *Parr v. United States,* 351 U.S. 513, 518, 76 S.Ct. 912, 916, 100 L.Ed. 1377 (1956) (quoting *Berman v. United States,* 302 U.S. 211, 212, 58 S.Ct. 164, 165, 82 L.Ed. 204 (1937)).

9. 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

10. 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

11. *Abney,* 431 U.S. at 658, 97 S.Ct. at 2039 (quoting *Cohen,* 337 U.S. at 546, 69 S.Ct. at 1225).

12. *Id.*

13. *Id.*

14. *United States v. Ellis,* 646 F.2d 132, 134 (4th Cir.1981). *See also United States v. Becton,* 632 F.2d 1294, 1297 (5th Cir.1980), *cert. denied,* 454 U.S. 837, 102 S.Ct. 141, 70 L.Ed.2d 117 (1981).

15. *Jackson v. Virginia,* 443 U.S. 307, 313–16, 99 S.Ct. 2781, 2785–2787, 61 L.Ed.2d 560 (1979).

16. *Abney,* 431 U.S. at 658, 97 S.Ct. at 2039.

17. *United States v. Balano,* 618 F.2d 624, 632 n. 13 (10th Cir.1979), *cert. denied,* 449 U.S. 840, 101 S.Ct. 118, 66 L.Ed.2d 47 (1980); *United States v. Bodey,* 607 F.2d 265, 267–68 (9th Cir.1979); *United States v. Wilkinson,* 601 F.2d 791, 794–95 (5th Cir.1979). The dissent challenges our assertion that the sufficiency issue is ultimately reviewable, implying that the paucity of precedent to support that position is tell-

Richardson's insufficiency claim will not be lost if it is not reviewed at this time, noting that "in the event he is convicted, [Richardson] can raise [the insufficiency claim] on appeal from that conviction."[18] Therefore, because the insufficiency claim does not meet either the second or third *Cohen* requirements, we cannot review that claim until after a final judgment is entered.

■ The appealability of the trial court's ruling on the double jeopardy claim is not as clear. Two circuits have held that the trial court's denial of a double jeopardy claim based on the insufficiency of the evidence is not immediately appealable under *Cohen*.[19] One circuit has held to the contrary.[20] We agree with the former view,[21] although for reasons slightly different from

---

ing. Dissenting op. at 1093. However, as the dissent notes, there are five federal courts of appeals' decisions which support our position in dicta and three federal circuits which have held that our assertion is correct. On the other hand, the dissent is able to cite only C.J.S. and a 1953 Alabama state court case which quotes C.J.S. as support for its position. Dissenting op. at 1093.

18. Appellee's Brief at 14 n. 3. The dissent reproves us because we suggest that appellate courts can vindicate the constitutional rights of a criminal defendant *after* he has been convicted. Dissenting op. at 1088–1089. *See also id.* at 1086–1087, 1094. As a matter of indisputable fact, that is what appellate courts do all the time. It seems that the real cause of this displeasure is not our decision, but decisions made by other institutions. The dissent may really be expressing disapproval of Congress' decision to give a criminal defendant the right to appeal his conviction since *every time* an appellate court reverses a criminal conviction it sets the "guilty" criminal free, or, in some cases, creates the possibility that he will be set free. The dissent may also disagree with the policy behind the double jeopardy clause. In *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), the Supreme Court held that the double jeopardy clause required that the defendant be set free despite his earlier conviction. Finally, the dissent may have a basic disagreement with the rule reiterated by the Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), that regardless of what the jury does, a criminal defendant is not guilty unless the prosecution presents evidence from which a rational juror could conclude beyond a reasonable doubt that the defendant had committed the crime. In any event, we refuse to shy away from the result we feel is compelled by law merely because it permits a criminal defendant to argue at the appellate level after a second trial that his conviction was obtained under constitutionally impermissible circumstances.

19. *United States v. Ellis,* 646 F.2d 132, 135 (4th Cir.1981); *United States v. Becton,* 632 F.2d 1294, 1297 (5th Cir.1980), *cert. denied,* 454 U.S. 837, 102 S.Ct. 141, 70 L.Ed.2d 117 (1981).

20. *United States v. McQuilkin,* 673 F.2d 681 (3d Cir.1982). In *McQuilkin* appellants appealed from a district court order vacating their criminal contempt convictions before a magistrate because the first trial was improperly conducted without a jury, and remanding for a new trial. It differed, therefore, from *Becton, Ellis,* and the present case in that it involved a new trial after conviction by a *magistrate* (but not by the court), rather than after jury failure to reach a verdict. We consider that distinction inconsequential to the jurisdictional issue; the essential elements of (1) a second trial before final judgment was entered and (2) the asserted inadequacy of evidence at the first trial were present.

21. The different results reached by the three courts reveal the different manner in which *Abney* can be interpreted. In *Abney* the Supreme Court held that "pretrial orders rejecting claims of former jeopardy, such as that presently before us," fall within the *Cohen* exception to the final judgment rule. 431 U.S. at 662, 97 S.Ct. at 2041. The Fourth and Fifth Circuits read *Abney* as a decision permitting application of the *Cohen* exception to a double jeopardy claim only when the issues presented by that claim meet all three of the *Cohen* requirements. *Ellis,* 646 F.2d at 134–35; *Becton,* 632 F.2d at 1296–97. The Third Circuit, on the other hand, would read *Abney* more broadly— as authority for immediate appeal of all double jeopardy claims, focusing on "the nature of the *right* protected." *McQuilkin,* 673 F.2d at 684 (emphasis added). Although there is language in *Abney* which can be read as suggesting that the need to protect a defendant's right to avoid the rigors and embarrassment of an unnecessary second trial is so great that all double jeopardy claims are immediately appealable, *see Abney,* 431 U.S. at 660–62, we refuse to read the decision that broadly. The argument that the nature of the *right* involved in a double jeopardy claim *requires* an appellate court to immediately review all denials of a double jeopardy claim is in reality an argument that the double jeopardy clause *requires* immediate appellate consideration of such claims. In order to accept that argument, the Supreme Court would have had to overrule the traditional rule that a criminal defendant has no constitutional right to an appeal. *See supra* text at note 6.

those advanced by the Fourth and Fifth Circuits.

As noted earlier,[22] Richardson's double jeopardy claim is premised entirely on the assumption that the trial court's ruling on the sufficiency issue was erroneous. As also noted earlier,[23] the propriety of the trial court's ruling on that issue cannot be reviewed by an appellate court at this time. Therefore, since Richardson's double jeopardy claim exists at the appellate level [24] *only* if the district court's sufficiency of the evidence ruling is overturned, our refusal to review that ruling precludes any meaningful review of his double jeopardy claim at this time. In other words, because this court is unable to address the sufficiency issue at this time and because that issue is the *only* basis for Richardson's double jeopardy claim, Richardson has failed to make *at this time any* double jeopardy claim which can be reviewed by an appellate court.[25]

The analysis outlined above may be self-explanatory. However, lest the simplicity of that analysis camouflage the complexity and importance of the issue being decided, we undertake to state our reasoning in another manner. Despite the fact that Richardson's underlying claims are constitutional, the jurisdictional issue in this case concerns only the *timing and scope of appeal,* a question of *statutory interpretation.* That jurisdictional issue is not an easy one, how-ever, because of the nature of the legal issue underlying both claims—the sufficiency of the evidence—a legal issue which requires full review of the entire record created at the trial level. In resolving that issue, there appear to be at least four alternatives available to us. First, we could read section 1291 so as to permit full review of both the double jeopardy and the insufficiency claim at this time. Second, we could interpret the statute so as to authorize immediate appeal of the double jeopardy claim, but not of the insufficiency claim. Third, we could deny immediate review of the present claims and wipe the slate clean, thereby precluding review. Finally, we could, as we do, conclude that the finality requirement of section 1291 precludes immediate appeal of any claim involving the sufficiency of the evidence, but that full review of both claims could be had after a final judgment is entered in the second trial.

The first alternative is unacceptable. The entire purpose of the finality requirement of section 1291 is to "discourage undue litigiousness and leaden-footed administration of justice, particularly damaging to the conduct of criminal cases." [26] That purpose would be greatly undermined if a criminal defendant could interrupt the trial proceedings to seek appellate review of the trial court's ruling on the sufficiency of evidence presented. Indeed, the established

---

We do not think the Court intended to accomplish such a radical change in the law when it rendered its decision in *Abney,* especially since it expressly reaffirmed the rule in that case. *Abney,* 431 U.S. at 656, 97 S.Ct. at 2038.

**22.** *See supra,* text at notes 3–5.

**23.** *See supra,* text at notes 14–18.

**24.** The dissent's discussion of when a double jeopardy claim "exists," Dissenting op. at 1088–1089, tends to obfuscate the real issue being decided. Richardson's double jeopardy claim does not exist on appeal for the reason that, separated from his insufficiency claim, it is meaningless. Richardson's double jeopardy claim is composed of two arguments: (1) that the evidence presented at the first trial was insufficient, and (2) that the prosecution's failure to produce sufficient evidence bars retrial. Since we cannot accept the first argument at

this time (because the trial court's adverse ruling on the issue cannot now be reviewed), the claim is deprived of one of its essential elements. Whether the claim continues to exist in some metaphysical sense is beside the point.

**25.** The dissent fails to explain how it would distinguish Richardson's insufficiency claim from his double jeopardy claim in terms of appealability. Since the legal issue at the base of both claims is precisely the same, *i.e.,* whether the evidence presented at the first trial was legally sufficient, we fail to see how the two claims can be distinguished under *Abney,* which focused on the collateral nature of the legal *issue* involved. *See Abney,* 431 U.S. at 658, 97 S.Ct. at 2039.

**26.** *DiBella v. United States,* 369 U.S. 121, 124, 82 S.Ct. 654, 656, 7 L.Ed.2d 614 (1962).

rule in this circuit, as well as in other circuits, is that denial of a motion to acquit on the ground of insufficient evidence is *not* a final decision within the meaning of section 1291.[27] Nor does the insufficiency claim fit into the *Cohen* exception, as noted above.[28] Further, granting jurisdiction to review a double jeopardy claim made after a declaration of mistrial caused by a hung jury would implicate the longstanding rule that retrial after a hung jury is not barred by the double jeopardy clause.[29] Therefore, the panel unanimously repudiates the first alternative. However, at that point the unanimity ends. The dissent would adopt a mixture of the second and third alternatives (alternatives which are not inextricably connected), and we adopt the fourth, concluding that both the second and the third alternatives are undesirable.

Authorizing immediate review of the double jeopardy claim without reviewing the insufficiency claim which gives it life (the second alternative) is unacceptable because it renders meaningless the review granted. The dissent would adopt this alternative because of the nature of the right involved in the double jeopardy claim. However, the dissent would assert jurisdiction over the double jeopardy claim and then perfunctorily dismiss it as frivolous without examining the argument underlying the claim. If, as the dissent asserts, the protection of Richardson's double jeopardy rights is so important that immediate review should be granted, that review should be meaningful, not merely cursory.

Completely precluding review of the insufficiency claim (the third alternative) is even more unpalatable.[30] The elimination of *Richardson's* right to have the trial court's determination of sufficiency reviewed would increase the likelihood that the government would be given a second chance to convict Richardson even though it failed to produce legally sufficient evidence the first time it had a full and fair opportunity to do so. This is one of the primary evils the double jeopardy clause was designed to prevent. As the Supreme Court has noted, the double jeopardy clause "forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." [31] Thus, wiping the slate clean after the first trial would permit the government to bolster its case and convict the defendant at the second trial without ever being held accountable *at the appellate level* for its possible failure to produce legally sufficient evidence at the first trial. We find no justification for this impairment of Richardson's rights.

We are aware that our decision increases the possibility that Richardson's double jeopardy right to be free from the rigors of an unnecessary second trial will be infringed since he will be required to endure the second trial before he is able to obtain appellate review of the trial court's ruling on the issue. However, because the rights infringed by *postponing* review are less ab-

**27.** *Cephus v. United States,* 324 F.2d 893, 895 (D.C.Cir.1963). *See also United States v. Young,* 544 F.2d 415, 416 (9th Cir.), *cert. denied,* 429 U.S. 1024, 97 S.Ct. 643, 50 L.Ed.2d 626 (1976); *Gilmore v. United States,* 264 F.2d 44 (5th Cir.), *cert. denied,* 359 U.S. 994, 79 S.Ct. 1126, 3 L.Ed.2d 982 (1959).

**28.** *See* text at notes 14–18.

**29.** *Keerl v. Montana,* 213 U.S. 135, 29 S.Ct. 469, 53 L.Ed. 734 (1909); *Dreyer v. Illinois,* 187 U.S. 71, 23 S.Ct. 28, 47 L.Ed. 79 (1902); *Logan v. United States,* 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429 (1892); *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824).

**30.** The dissent reprimands us for our disregard of Richardson's rights. Dissenting op. at 1086–1087. Such a charge is ironic since it is advanced in an opinion which advocates the adoption of both the second and third alternatives outlined above. We hold that appellate consideration of Richardson's insufficiency and double jeopardy claims must be *delayed.* The dissent would *completely preclude* review of the former claim and *render meaningless* any review of the latter. One need not wonder which result Richardson would prefer.

**31.** *Tibbs v. Florida,* 457 U.S. 31, 40–41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982) (quoting *Burks v. United States,* 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978)). *See also United States v. DiFrancesco,* 449 U.S. 117, 128, 101 S.Ct. 426, 432, 66 L.Ed.2d 328 (1980).

solute than those infringed by *precluding* review and because the harm caused by permitting immediate review is greater than the harm created by permitting full review later, we feel that we are justified in drawing the line where we do.

The double jeopardy clause protects a variety of interests; among them a criminal defendant's interest "in avoiding multiple prosecutions even where no final determination of guilt or innocence has been made." [32] This is an interest which is "wholly unrelated to the propriety of any subsequent conviction." [33] It is an interest in avoiding the rigors and embarrassment of a second trial.[34] However, the defendant's interest in avoiding the rigors of a second trial is *not absolute.* For example, his interest in this regard can be overridden by society's interest in seeing that the prosecution has at least "one complete opportunity to convict those who have violated its laws." [35] Thus, a judge may discharge a hung jury and require the defendant to submit to a second trial without violating the double jeopardy clause.[36] Similarly, it seems logical to conclude that Congress, in

adopting the section 1291 finality requirement, determined that society's interest in avoiding the disruptions caused by interlocutory appeals involving the sufficiency of the evidence [37] outweighed the defendant's interest in ensuring that his less-than-absolute right would not be infringed without appellate review.

However, the double jeopardy clause also protects interests which are more absolute. These include the defendant's interest in avoiding an erroneous conviction. In this respect the double jeopardy clause prevents the prosecution "from honing its trial strategies and *perfecting its evidence through successive attempts at conviction.*" [38] This prohibition seems to be absolute because it lies "at the core of the Clause's protections." [39] In light of the above, and in light of the Supreme Court's opinion in *Burks v. United States,*[40] it appears that the double jeopardy clause is violated if the government has a full and fair opportunity to convict a defendant, fails to produce enough evidence to sustain its constitutional burden to present legally sufficient evidence, and is then given another opportunity to obtain a

---

**32.** *United States v. Scott,* 437 U.S. 82, 92, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65 (1978).

**33.** *Abney,* 431 U.S. at 661, 97 S.Ct. at 2041.

**34.** *Id.* at 661–62, 97 S.Ct. at 2041–2042.

**35.** *Arizona v. Washington,* 434 U.S. 497, 509, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978).

**36.** *Keerl v. Montana,* 213 U.S. 135, 29 S.Ct. 469, 53 L.Ed. 734 (1909); *Dreyer v. Illinois,* 187 U.S. 71, 23 S.Ct. 28, 47 L.Ed. 79 (1902); *Logan v. United States,* 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429 (1892); *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824).

**37.** The delay caused by appellate review of a claim based on the sufficiency of the evidence could be extreme since the entire trial record would have to be reviewed before a decision could be made. Such delays are especially undesirable in criminal proceedings. *See Dibella v. United States,* 369 U.S. 121, 126, 82 S.Ct. 654, 657, 7 L.Ed.2d 614 (1962) ("the delays and disruptions attendant upon intermediate appeal are especially inimical to the effective and fair administration of the criminal law."); *Cobbledick v. United States,* 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940) ("encouragement of delay is fatal to the vindication of the criminal law").

**38.** *Tibbs,* 102 S.Ct. at 2218.

**39.** *Id.* If a defendant is unnecessarily required to go through a second trial his injury is the resultant "embarrassment, expense ... ordeal, [and] continuing state of anxiety and insecurity." *Abney,* 431 U.S. at 661–62, 97 S.Ct. at 2041–2042 (quoting *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–224, 2 L.Ed.2d 199 (1957)). On the other hand, if the defendant is unjustifiably *convicted* at the second trial the injury increases in magnitude because he is then subject to the punishment prescribed for the crime. The Supreme Court long ago observed that "[i]t is the *punishment* that would legally follow the second conviction which is the real danger guarded against by the Constitution." *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 173, 21 L.Ed. 872 (1874). Thus, it appears that while the defendant's interest in avoiding the rigors of the second trial may not be absolute (*see supra,* text at notes 32–37), his interest in avoiding an unconstitutional conviction is.

**40.** 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

conviction. The possibility that this constitutional violation would occur would increase if we eliminated Richardson's right to appellate review of the sufficiency issue because only one (the trial) court would be evaluating the sufficiency of the evidence produced at the first trial. We find no societal interest which justifies this infringement on Richardson's rights.

As noted above, it cannot be argued that the double jeopardy clause requires the appellate court to review Richardson's insufficiency claim after the second trial.[41] But at the same time, while it seems logical to conclude that the need to avoid the disruptions caused by interlocutory appeals in criminal cases justifies *postponing* review of Richardson's insufficiency claim (thereby increasing the possibility that Richardson's less-than-absolute interest in avoiding the rigors of a second trial will be infringed), we refuse to believe, at least in the absence of clear evidence to the contrary, that Congress intended to *preclude* review of that issue when the result would have been to increase the likelihood that Richardson's absolute right to avoid an unconstitutional conviction would be violated.

Therefore, having rejected the other available alternatives and having satisfied ourselves that the interpretation we adopt is consistent with the Supreme Court's application of the *Cohen* exception in *Abney*, we conclude that Richardson cannot appeal the trial court's ruling on his insufficiency and double jeopardy claims until a final judgment is entered against him.

### III. CONCLUSION

Richardson presents us with an appeal from the trial court's denial of two motions based on his argument that the evidence presented against him at his criminal trial was insufficient. This appeal, however, comes before a final judgment has been entered against him. Because a review of the issue at the base of the claims would undermine the policy behind the finality requirement of section 1291, we hold that we cannot review those claims at this time, realizing full well that the trial court may have erred in its rulings and that as a result Richardson may be required to bear the rigors of an unnecessary second trial. As the Supreme Court has noted:

> Bearing the discomfiture and cost of a prosecution for crime even by an innocent person is one of the painful obligations of citizenship. The correctness of a trial court's rejection even of a constitutional claim made by the accused in the process of prosecution must await his conviction before its reconsideration by an appellate tribunal.[42]

Accordingly, Richardson's appeal is dismissed.

*It is so ordered.*

SCALIA, Circuit Judge, dissenting:

The majority opinion recognizes a double jeopardy right following upon a trial that results in a hung jury, but denies appellate vindication of that right until after the second trial has resulted in a conviction. It thus produces a result that will bring the criminal law process into greater public disrepute than the exclusionary rule, while at the same time doing criminal defendants an evident injustice. The exclusionary rule ordinarily does its work before a verdict of guilty has been pronounced; the community may strongly suspect that the acquitted or discharged defendant should not be walking the streets, but will never know for sure. The double jeopardy rule announced today, by contrast, assures that only *after* the defendant has been publicly proclaimed guilty beyond a reasonable doubt will he be set free. This highly visible compromise of the public safety is counterbalanced by a disregard of the announced rights of the defendant. He is told that he has a constitutional right not to be tried twice for the same offense, which can be vindicated only after he has been tried twice for the same offense. I cannot support the analysis that

---

**41.** *See supra,* text at note 6.

**42.** *Cobbledick v. United States,* 309 U.S. 323, 325–26, 60 S.Ct. 540, 541–542, 84 L.Ed. 783 (1940).

produces these evenhandedly offensive results. In my view, the majority opinion is mistaken both in its holding that an appeal will not now lie, and in its dictum that an appeal upon final conviction can succeed. I discuss each of these in turn.

## I. JURISDICTION

Central to the jurisdictional issue is the Supreme Court's decision in *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). This held, contrary to prior case law,[1] that trial court denial of a motion to dismiss an indictment on double jeopardy grounds is a "final decision" within the meaning of 28 U.S.C. § 1291.[2] The Court reasoned that although the denial of such a motion is not "final" in the sense that it terminates the proceeding, it falls within the "collateral order" exception to the final judgment rule, first recognized in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and thus is immediately appealable.

The specific violation of the double jeopardy clause alleged in *Abney* was the impending retrial of the defendant following an appellate reversal of his prior conviction because of improperly admitted evidence. The Court's language and reasoning on the jurisdictional point, however, apply to all double jeopardy claims, as the following excerpts demonstrate:

> Although it is true that a pretrial order denying a motion to dismiss an indictment on double jeopardy grounds lacks the finality traditionally considered indis-

pensable to appellate review, we conclude that such orders fall within the "small class of cases" that *Cohen* has placed beyond the confines of the final-judgment rule.

431 U.S. at 659, 97 S.Ct. at 2040 (footnote omitted).

> Moreover, the very nature of a double jeopardy claim is such that it is collateral to, and separable from, the principal issue at the accused's impending criminal trial, *i.e.,* whether or not the accused is guilty of the offense charged.

*Ibid.*

> Finally, the rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence.

431 U.S. at 660, 97 S.Ct. at 2040.[3]

The majority's attempt to avoid the effect of *Abney* rests upon the *ipse dixit* that "Richardson's double jeopardy claim exists at the appellate level *only* if the district court's sufficiency of the evidence ruling is overturned." Maj.Op. at 1082. Strictly speaking—and as a matter of fact, as opposed to legal fiction—that is of course not true. A double jeopardy claim exists when the defendant claims double jeopardy—and the assertedly inseverable connection of that claim with an unappealable earlier order goes *at most* to the validity, rather than the existence, of the claim. I assume what

---

**1.** *See, e.g., Bryan v. United States,* 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335 (1950).

**2.** Section 1291 provides:
> The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court.

**3.** The only language in the opinion conceivably subject to the interpretation that not all double jeopardy claims are covered is the following:
> We therefore hold that pretrial orders rejecting claims of former jeopardy, *such as that presently before us,* constitute "final de-

cisions" and thus satisfy the jurisdictional prerequisites of § 1291.

431 U.S. at 662, 97 S.Ct. at 2041 (footnote omitted, emphasis added). It is possible to interpret the italicized phrase as one of limitation—meaning that *only* claims of former jeopardy "such as that presently before us" come within the newly enunciated rule. However, the phrase is properly regarded not as limiting but as descriptive—the equivalent of "for example, that presently before us." The latter interpretation is the more plausible, not only because of the other language in the opinion but also because of the commas separating the phrase, which would be inappropriate for the limiting usage.

the majority means, then, is that no double jeopardy *right* (*i.e.,* no *valid* claim) exists unless the sufficiency-of-evidence ruling is overturned. Before examining the truth of this assertion, I may note that, even if it were correct, the result it would produce is dismissal of the present appeal on the merits, rather than on jurisdictional grounds. In *Abney* itself the Court found—*after* its assertion of jurisdiction—that no double jeopardy right existed; and the opinion envisions the entertaining of double jeopardy appeals where nonexistence of the right is so clear that the claim is "frivolous."[4] The Supreme Court was saying what I have said above: that if the appellant claims double jeopardy he has made a double jeopardy claim, no matter how unmeritorious it may be. (Of course, no more time or effort is involved in dismissing a frivolous appeal on the merits than on jurisdictional grounds.)

But regardless of whether it should lead to dismissal for lack of jurisdiction (as the majority asserts) or dismissal on the merits, let me address the substance of the proposition that the double jeopardy right "exists ... *only* if the ... sufficiency of the evidence ruling is overturned." Such a principle is, of course, neither a statement of fact nor a requirement of logic. It would be entirely possible to grant appellant's motion to bar retrial while letting the sufficiency-of-evidence ruling at the first trial stand— just as federal district courts find it possible to grant habeas corpus petitions despite the existence of contradictory state court judgments that they do not formally "overturn." It is not true that "Richardson's double jeopardy claim is premised entirely on the assumption that the trial court's ruling on the sufficiency issue was erroneous," Maj.Op. at 1082, at least not true in the

only relevant sense, which implies that the one is entirely dependent upon the other. The appellant's claim (or right) may logically require the conclusion that the trial court was wrong, but it is based upon nothing except the prosecution's failure, as a matter of fact—*whatever* the trial court may have said—to produce enough evidence to go to the jury.

To say that the principle that the double jeopardy right exists only if the sufficiency-of-evidence ruling is overturned is neither an observable fact nor a logical imperative is not, of course, necessarily to deprive it of an honorable place in the law-books. *Ipse dixits* starker than this shape the concepts and categories that channel legal thought, permit generalized and hence efficient disposition of cases, assure equality of treatment, and check judicial arbitrariness. I am no foe of conceptualism. But the one indispensable condition for the creation of such intellectual constructs is that they appear likely to produce just results. Thus, one may properly employ the analytic conceit here under discussion—that the double jeopardy right "exists ... *only* if the sufficiency of the evidence ruling is overturned" —or the similar conceit adopted by the Fifth Circuit in *United States v. Becton,* 632 F.2d 1294, 1296 (5th Cir.1980), *cert. denied,* 454 U.S. 837, 102 S.Ct. 141, 70 L.Ed.2d 117 (1981)—that the double jeopardy claim and the objection to denial of motion to acquit (like the old common-law husband and wife) are one (the husband, in this case, being the latter)—if the predictable consequences of those devices are good. If the consequences are bad, then a different conceit (for example, that the double jeopardy claim is the husband) or even a resort to legal realism would be preferable. And

4. The Court said:

Admittedly, our holding may encourage some defendants to engage in dilatory appeals as the Solicitor General fears. However, we believe that such problems of delay can be obviated by rules or policies giving such appeals expedited treatment. It is well within the supervisory powers of the courts of appeals to establish summary procedures and calendars to weed out frivolous claims of former jeopardy.

431 U.S. at 662 n. 8, 97 S.Ct. at 2042 n. 8. This same quotation refutes the Fourth Circuit's attempt to distinguish *Abney* on the ground (which is really only a more explicit expression of what the majority has done here) that "*Abney* limited review to colorable double jeopardy claims." *United States v. Ellis,* 646 F.2d 132, 134 (4th Cir.1981).

that is the nub of my disagreement. I can understand why one might perform intellectual gymnastics of this sort to *avoid* the results which the majority opinion produces—but surely not to *achieve* them. Why would one, with malice aforethought, place appellate courts in the position where they can only vindicate constitutional rights by awaiting proof positive that the person they set free is guilty? Or why subject a defendant to a second trial and a public conviction before permitting appellate courts to pronounce that he should not have been tried twice?

The only answer to these questions contained in the majority opinion—and, concurrently, its only pragmatic basis for distinguishing *Abney*—is the threat of " 'leaden-footed administration of justice, particularly damaging to the conduct of criminal cases.' " Maj.Op. at 1083, quoting from *DiBella v. United States,* 369 U.S. 121, 124, 82 S.Ct. 654, 656, 7 L.Ed.2d 614 (1962). In my view, this is well outweighed by the dual threat of destroying public confidence in the judicial criminal process, and of denying the defendant effective vindication of a constitutional guarantee. This appeal has not been taken, after all, in the midst of an ongoing trial, but during an interlude that has already occurred, requiring the selection and empanelling of a new jury. Not infrequently, such interludes are in any event protracted. *See, e.g., United States v. Sanford,* 429 U.S. 14, 97 S.Ct. 20, 50 L.Ed.2d 17 (1976) (four months); *United States v. Ellis, supra* note 4 (three to five months). In this regard a double jeopardy claim that is "given life," *see* Maj.Op. at 1084, by a determination at a prior trial is not much different from one that is fathered by a determination in a prior appeal, as in *Abney.* They both slow up the process at a stage in which

it has already been interrupted. And they are both worth the delay.

I would find, therefore, that we have jurisdiction to entertain the present appeal, a disposition supported by the Third Circuit's decision in *United States v. McQuilkin,* 673 F.2d 681 (3d Cir.1982).[5]

## II. MERITS OF THE DOUBLE JEOPARDY CLAIM

I turn, then, to the merits of appellant's double jeopardy claim.[6] Much of the case law concerning double jeopardy involves the question when jeopardy attaches. *See, e.g., Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). The present appeal may be regarded as raising essentially the converse issue: When does the first jeopardy *cease,* so that subsequent proceedings constitute a *second* attempt at defendant's "life or limb"? The Government asserts the traditional rule that the discharge of a jury for failure to reach a verdict does not, so to speak, terminate the original jeopardy, so that further proceedings on the same charge may be had. *See Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *Logan v. United States,* 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429 (1892); *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). Appellant asserts that this traditional rule has been changed by *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *accord, Hudson v. Louisiana,* 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), which he correctly describes as "[lying] at the nerve-center" of his case. Brief for Appellant at 31. In effect, he contends that the teaching of *Burks* is that a hung jury following the prosecution's failure to produce legally suf-

---

**5.** *McQuilkin* was foreshadowed by the same circuit's decision in *United States v. United States Gypsum Co.,* 600 F.2d 414 (3d Cir.), *cert. denied,* 444 U.S. 884, 100 S.Ct. 175, 62 L.Ed.2d 114 (1979). There, defendants' convictions had been reversed on appeal without consideration of evidentiary sufficiency, and the case remanded. Prior to retrial, defendants moved for acquittal on the grounds of insufficient evidence at their first trial. The Third Circuit

permitted appeal from denial of this motion because, it said, double jeopardy principles would prohibit retrial if the evidence at the first trial was insufficient.

**6.** The Double Jeopardy Clause of the Fifth Amendment reads: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."

ficient evidence terminates the original jeopardy, so that further prosecution for the same offense is barred. The majority opinion, while not allowing immediate appellate vindication of the alleged right, essentially accepts appellant's argument, although it is not as frank in acknowledging that the asserted right is a recent creation of *Burks,* and instead portrays it as an obvious and inevitable application of the double jeopardy clause—despite the absence of a single pre-*Burks* holding to support it.

In *Burks,* the court of appeals had overturned a jury conviction on the basis of insufficiency of the evidence. Instead of terminating the case, however, it had remanded, leaving it to the trial court to decide whether a directed verdict of acquittal should be entered or a new trial ordered. The Supreme Court found the remand to be in error, and held that the Double Jeopardy Clause required the court of appeals to direct a judgment of acquittal. Appellant and the majority interpret *Burks* to mean that the failure of the prosecution to produce sufficient evidence gives rise to a double jeopardy right at the conclusion of the first trial. I think, to the contrary, that *Burks* stands for the proposition that a *determination of insufficiency,* whether made by the trial court or by an appellate court, brings the original jeopardy to an end and prevents further prosecution. The difference is obviously significant.

The former position finds support in the following passage from *Burks:*

> The appellate decision unmistakably meant that the District Court had erred in failing to grant a judgment of acquittal. To hold otherwise would create a purely arbitrary distinction between those in petitioner's position and others who would enjoy the benefit of a correct decision by the District Court....
>
> The Double Jeopardy Clause forbids a second trial for the purpose of affording

the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. This is central to the objective of the prohibition against successive trials. The Clause does not allow "the State ... to make repeated attempts to convict an individual for an alleged offense," since "[t]he constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense."

437 U.S. at 11, 98 S.Ct. at 2147 (citations and footnote omitted). The argument based upon this language is as follows: If *Burks* is to achieve the objective of denying the prosecution "another opportunity to supply evidence which it failed to muster in the first proceeding," it must be applied in such fashion that any failure of proof by the government—whether resulting in an acquittal, a hung jury, or a conviction reversed on appeal—bars retrial. To put the point in the conceptual framework I described earlier, it is necessary to consider the declaration of mistrial rather than the appellate finding of inadequacy as the event terminating the original jeopardy. Several cases have taken this view.[7]

There are many indications, however, that this was not the Supreme Court's intent, and that the above quoted expression of broad desiderata which the holding of *Burks* at least partially pursues was not meant to imply approval of all means necessary to reach the stated ends. There is, to begin with, the rest of the *Burks* opinion itself, which consistently focuses not upon the failure of proof in the trial court, which appellant and the majority opinion consider central, but upon the adjudgment of failure of proof by the court of appeals:

> By implication, [petitioner] argues, the appellate reversal was the operative equivalent of a district court's judgment

7. *United States v. McQuilkin, supra; United States v. Bodey,* 607 F.2d 265 (9th Cir.1979). The court in the former case, after reviewing the evidence presented at the first trial, found it adequate, and sustained the conviction; thus, a rigorous definition of holding would consign its statements on the double jeopardy issue to *obiter dictum. Bodey,* however, actually reverses the conviction, and so squarely holds that the double jeopardy defense lies, citing *Burks,* but without analysis.

of acquittal .... Therefore, he maintains, it makes no difference that the determination of evidentiary insufficiency was made by a *reviewing* court since the double jeopardy considerations are the same, regardless of which court decides that a judgment of acquittal is in order.

437 U.S. at 5–6, 98 S.Ct. at 2144–2145 (emphasis in original).

[I]t should make no difference that the *reviewing* court, rather than the trial court, determined the evidence to be insufficient ....

*Id.* at 11, 98 S.Ct. at 2147 (emphasis in original).

[R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case.

*Id.* at 15, 98 S.Ct. at 2149.

The importance of a reversal on grounds of evidentiary insufficiency for purposes of inquiry under the Double Jeopardy Clause is underscored by the fact that a federal court's role in deciding whether a case should be considered by the jury is quite limited.

*Id.* at 16, 98 S.Ct. at 2149. Indeed, the *Burks* opinion's summary of its own holding is as follows:

Since we hold today that the Double Jeopardy Clause precludes a second trial *once the reviewing court has found the evidence legally insufficient,* the only "just" remedy available for that court is the direction of a judgment of acquittal.

*Id.* at 18, 98 S.Ct. at 2150 (emphasis added). In short, when the opinion is considered in full, it is eminently clear that the Court did not intend to change prior law governing new trials, as appellant suggests, but merely to extend or clarify the well-established principle that an acquittal—even an erroneous acquittal [8]—bars retrial. *Burks* only establishes that an appellate finding of inadequate proof is the equivalent of an acquittal.

This reading of *Burks* is confirmed by the Court's opinion in the very next case in the same volume of the United States Reports, *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), the first case to apply the new *Burks* learning. *Greene* involved a state conviction which had been obtained in a retrial after the first conviction was set aside by the Florida Supreme Court. The defendant's double jeopardy claim was presented in a federal habeas corpus petition. The federal court of appeals affirmed the district court's dismissal of the petition on the basis—suggested in prior cases but conclusively rejected in *Burks*—that defendant's motion for a new trial barred a subsequent double jeopardy claim. The Supreme Court noted that, in light of *Burks,* this was obvious error if the Florida Supreme Court's reversal of the original conviction was in fact based upon insufficiency of evidence. Because the Court found some ambiguity in the grounds for reversal, it disposed of the case as follows:

Given the varying interpretations that can be placed on the actions of the several Florida appellate courts, we conclude that this case should be remanded to the Court of Appeals for reconsideration in light of this opinion and *Burks v. United States, ante,* p. 1 [98 S.Ct. 2141, 57 L.Ed.2d 437]. The Court of Appeals will be free to direct further proceedings in the District Court or to certify unresolved questions of state law to the Florida Supreme Court.

437 U.S. at 26–27, 98 S.Ct. at 2155 (footnote and citations omitted). For present purposes, the significance of the opinion is this: If *Burks* meant what appellant and the majority opinion here claim, then in *Greene,* decided the same day, the Supreme Court would surely have displayed some interest— and would have instructed the court of appeals to display some interest—not merely in whether the Florida state courts *found* that the evidence in the first trial was inadequate, but also in whether, regardless of what the Florida courts found, the evi-

---

**8.** *See, e.g., Fong Foo v. United States,* 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962).

dence was *in fact* inadequate.[9] There is no hint of such concern.

Finally, and perhaps most importantly, rejection of appellant's and the majority's expansive interpretation of *Burks* is warranted because of the significant practical consequences that would result from its adoption. As set forth in the first part of this opinion, I think it clear that the double jeopardy claim is immediately reviewable and the right immediately assertable. Thus, neither lack of jurisdiction nor lack of ripeness can ward off the result which caused such concern to the *Becton* and *Ellis* courts—effective reversal of the longstanding rule that the denial of a motion to acquit is not reviewable until conviction is obtained. Every hung jury would entitle the defendant to an immediate appellate determination of the sufficiency of the evidence. Moreover, even if the majority's elegantly constructed jurisdictional theory were to stand the test of time and the force of public outcry, it would still not prevent two other severe consequences of the new double jeopardy right that the majority creates: Where the alleged § 1291 bar to immediate review does not exist, the inadequacy-of-evidence claim must be enter-

tained—so that appellate courts would no longer be able to reverse convictions and remand on the basis of procedural error alone, without entertaining and determining challenges to the sufficiency of the evidence. *See United States v. Marolda,* 648 F.2d 623 (9th Cir.1981) ("*Marolda II*").[10] And such accelerated determination of evidentiary adequacy by state courts (assuming, what will be discussed more specifically below, that acceleration is all that is involved) will trigger accelerated federal court review of the same issue, through *habeas corpus* petitions by defendants awaiting retrial in physical custody or released on bail. *See Delk v. Atkinson,* 665 F.2d 90 (6th Cir.1981). I have stated earlier that the mere occurrence of such untoward results will not justify the erection of what seem to me contrived obstacles to the defendant's assertion of his double jeopardy rights. It does justify, however, the refusal to create double jeopardy rights hitherto unheard of.

Moreover, it may well be that mere acceleration of review that would otherwise be accorded at a later date is not all that is involved. Those cases which reject appeals

---

9. It is clear that federal courts on *habeas corpus* petitions must review the adequacy of evidence where essential to the validity of ultimate conviction. *Moore v. Duckworth,* 443 U.S. 713, 99 S.Ct. 3088, 61 L.Ed.2d 865 (1979); *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 *reh'g denied,* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979).

10. *Marolda* holds that, even where a conviction has been set aside for procedural error alone, the double jeopardy bar still applies if the evidence at the first trial was insufficient. As a practical matter, this means that the appellate court must always consider the sufficiency-of-evidence issue, even when it reverses on other grounds. Otherwise, the only effect of the remand will be to require a second appeal after the defendant's double jeopardy claim is rejected by the district court that denied his motion for acquittal at the original trial. This is precisely what happened in *Marolda,* where the Ninth Circuit failed to consider the sufficiency issue in the first appeal. *See United States v. Marolda,* 615 F.2d 867 (9th Cir.1980) ("*Marolda I*"). The holding in *Marolda II* was based upon, and is the logical consequence of, the Ninth Circuit's acceptance of the expansive interpretation of *Burks, see United States v. Bodey,* 607

F.2d 265 (9th Cir.1979) ("*Bodey II*"). That court has sought to create an exception to this logical consequence for the large class of procedural reversals based upon improper admission of evidence. It has reasoned that the adequacy of the remaining evidence, after exclusion of the improperly admitted portion, need not be evaluated since, had the improperly admitted portion been excluded at the outset, the prosecution might have produced additional proof. *See United States v. Harmon,* 632 F.2d 812, 814 (9th Cir.1980). That speculation hardly seems likely to be so generally true that it would justify such an across-the-board exception.

*Harmon* is incorrect, by the way, in reading footnote 9 of *Greene v. Massey, supra,* 437 U.S. at 26, 98 S.Ct. at 2155, as reserving the question whether, in reversing a conviction for improper admission of evidence, a court must also review the adequacy of the remaining evidence. Rather, it reserved the question whether, *if* the reviewing court chooses to examine the remaining evidence *and finds it insufficient,* the Double Jeopardy Clause bars retrial. To the same effect as *Harmon* is *Delk v. Atkinson,* 665 F.2d 90, 93 n. 1 (6th Cir.1981).

of the present sort, both pre- and post-*Burks,* on the ground of lack of jurisdiction make their task easy by assuming so. They assert that, after all, the issue of insufficiency of the evidence in the first trial can always be raised if and when a conviction in a later trial is finally obtained, since the denial of the motion to dismiss will then be final and reviewable. *See United States v. Rey,* 641 F.2d 222, 225 (5th Cir.), *cert. denied,* 454 U.S. 861, 102 S.Ct. 318, 70 L.Ed.2d 160 (1981); *United States v. Becton,* 632 F.2d 1294, 1296 (5th Cir.1980), *cert. denied,* 454 U.S. 837, 102 S.Ct. 141, 70 L.Ed.2d 117 (1981); *United States v. Young,* 544 F.2d 415, 418 (9th Cir.), *cert. denied,* 429 U.S. 1024, 97 S.Ct. 643, 50 L.Ed.2d 626 (1976); *United States v. Kaufman,* 311 F.2d 695, 698–99 (2d Cir.1963); *Northern v. United States,* 300 F.2d 131, 132 (6th Cir.1962). If, however, these dicta are an accurate reflection of the law, the paucity of direct holdings to support the point is remarkable.

I have found only four cases that involve an assertion, after conviction, that the evidence presented to an earlier hung jury was legally insufficient. The only one of them that was decided pre-*Burks* declined to entertain the assertion, stating that it was enough that the government had sustained its burden in the new trial. *United States v. Bodey,* 547 F.2d 1383 (9th Cir.), *cert. denied,* 431 U.S. 932, 97 S.Ct. 2639, 53 L.Ed.2d 249 (1977) ("*Bodey I*"). All three of the cases that entertain the assertion are post-*Burks* and rely upon or at least assume the existence of a double jeopardy ground for appeal. *United States v. Balano,* 618 F.2d 624 (10th Cir.), *cert. denied,* 449 U.S. 840, 101 S.Ct. 118, 66 L.Ed.2d 47 (1980); *United States v. Bodey,* 607 F.2d 265 (9th Cir.1979) ("*Bodey II*"); *United States v.*

*Wilkinson,* 601 F.2d 791 (5th Cir.1979). The only one which, on reviewing the evidence in the prior trial, actually finds it inadequate and reverses the conviction, does so explicitly on the basis of *Burks,* reversing its prior holding in the same case that only the sufficiency of evidence in the new trial is relevant. *Bodey II, supra.*[11] Before *Burks,* both the cases and the commentators contain such statements as "When a jury fail to agree on a verdict ... the whole proceeding is nullified, and nothing remains which can benefit accused," 22 C.J.S. *Criminal Law* § 260 at 681 (1961); " 'In legal effect a mistrial is equivalent to no trial at all,' " *Powell v. State,* 37 Ala.App. 192, 193, 65 So.2d 718, 719 (Ala.Ct.App.1953) (quoting from 58 C.J.S. *Mistrial* at 834 (1948)).

Such an approach—denying not only a constitutional double jeopardy claim but even a statutory right to appeal insufficiency of the evidence at an earlier trial—does not threaten to produce an inequitable criminal justice system in the future any more than it has in the several hundred years past. The majority's concern over giving the prosecution "two bites at the apple"—enabling the government to learn the strengths and weaknesses of the defendant's case in the first trial—is not uniquely applicable to insufficiency-of-evidence cases. The same effect is produced by the prosecution's introduction of inadmissible evidence, producing a conviction that must thereafter be reversed, or by its proposal of erroneous instructions leading to the same result; yet it is not asserted that in such cases a conviction in the second trial must be set aside. In fact, from the point of view of overall impact upon the system of criminal justice, prosecutorial error in failing to produce sufficient evidence

---

**11.** There is a similar dearth of authority concerning the same issue in the civil context. I have found only one case entertaining the allegation that a judgment for plaintiff should be set aside because the evidence introduced at the first trial, which resulted in a hung jury, was inadequate. On the merits, the allegation was rejected. *See McFall v. Tooke,* 308 F.2d 617 (6th Cir.1962). As late as 1963 (and apparently before *McFall* was in the Federal Reports), the Second Circuit noted the same absence of authority. *See Basciano v. Reinecke,* 313 F.2d 542–43 (2d Cir.1963). In the civil field as in the criminal, however, opinions denying interlocutory review of the adequacy of the evidence after hung juries are wont to justify their denial by asserting that the issue may later be raised if plaintiff ultimately prevails. *See, e.g., Ford Motor Co. v. Busam Motor Sales,* 185 F.2d 531, 534 (6th Cir.1950); *Dostal v. Baltimore & Ohio R.R.,* 170 F.2d 116 (3d Cir.1948).

is *less* demanding of the massive sanction of invalidating a subsequent conviction. That error invariably carries its *own* severe penalty—the extremely high risk that either the trial judge will dismiss the indictment or the jury will acquit, thereby barring further prosecution. Thus, it is not only true that the majority's disposition will (as noted at the outset) more certainly release the guilty than does the exclusionary rule; but it will do so with less reason, since there is no need to deter intentionally feeble prosecutions as there is to deter intentional violations of Fourth or Fifth Amendment rights.

\*  \*  \*

In sum, the position adopted by the majority—that a double jeopardy right ultimately exists, but a double jeopardy claim may not now be asserted—seems to me wrong on both counts. While the holding of the opinion (rejection of an immediate appeal) appears to preserve the traditional balance between the rights of the accused and the public safety needs of the society, its dictum continues the erosion of the latter which has been characteristic of the past two decades. It acknowledges the right of a guilty and convicted defendant to go free if an examination of the evidence at his first trial shows that a motion to dismiss should have been granted. Perhaps that should be the law; but there is no evidence that it has ever been either the law or (worse still, what the majority would make it) the Constitution. And because the even-handedly offensive consequences of the majority's jurisdictional holding render it most unlikely that that obstacle to immediate appeal will long endure, the opinion foreshadows a regime in which criminal cases resulting in hung juries will routinely be appealed for sufficiency-of-evidence review.

For these reasons, I would find jurisdiction to entertain the present appeal and would affirm on the merits.